**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

FRANK J. CAPOZZI,

    Petitioner,

v.

LAMINE NDIAYE,

    Respondent.

Civil Action
No. 21-19533 (CPO)

**OPINION**

**O'HEARN, District Judge.**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Respondent filed an Answer opposing relief, (ECF No. 23), and Petitioner filed a Reply, (ECF No. 24). For the reasons set forth below, Court will dismiss Petitioner's claims challenging the validity of, and seeking to correct, his sentence in connection with U.S.S.G. § 5G1.3, for lack of jurisdiction, and deny the remainder of the Petition.

**I.    BACKGROUND**

This case arises from Petitioner's federal and state sentences. First, on October 3, 2013, state authorities in Luzerne County, Pennsylvania, arrested Petitioner on insurance fraud and related charges, in State Crim. No. CR-490-2014. (ECF No. 23-3, at ¶ 5(a).) The next day, on October 4, 2013, a state court released Petitioner on bail in CR-490-2014. (*Id*. ¶5(b).) On July 31, 2014, state authorities separately charged Petitioner with fraud in obtaining food stamps or public assistance, in State Crim. No. CR-3071-2014, and released him on bond. (ECF No. 23-4, at 33; ECF No. 18-1, at ¶ 44.)

Ultimately, on April 13, 2015, the state court revoked Petitioner's bail and remanded him into custody. (ECF No. 18-1, at ¶ 43.) The state court accepted Petitioner's guilty plea in State

Crim. No. CR-490-2014 and sentenced him to a term of 18 to 36 months, followed by three years of probation. (*Id.*) Petitioner then began to serve his state sentence. On June 10, 2015, the state court sentenced Petitioner in State Crim. No. CR-3071-2014, to an aggregate term of 13 to 26 months in prison and did not state that it was to run concurrent to the sentence in State Crim. No. CR-490-2014. (*Id.* ¶ 44; ECF No. 23-4, at 34.)

On November 30, 2016, while Petitioner was serving his state sentences, a federal grand jury returned a 20-count indictment against Petitioner in the United States District Court for the Middle District of Pennsylvania, in Fed. Crim. No. 3:16-CR-00347. (ECF No. 23-4, at 42–55.) The indictment charged Petitioner with conspiracy to defraud the Government with respect to income tax claims, wire fraud, aggravated identity theft (aiding and abetting), and related charges. (*Id.*)

On December 15, 2016, while Petitioner was still in state custody serving his state sentences, federal authorities transferred him into the temporary federal custody of the United States Marshals, through a writ of habeas corpus *ad prosequendum*, in connection with Fed. Crim. No. 3:16-CR-00347. (ECF No. 23-4, at 39, 55.) Petitioner remained in temporary federal custody, until April 13, 2018, at which point he finished serving his state sentences and was "released"[1] into exclusive federal custody. (ECF No. 18-1, at 5.) As a result, although Petitioner was physically detained in federal facilities, he had completed serving his state sentences. (*Id.*)

About a month later, on May 16, 2018, the Middle District of Pennsylvania released Petitioner from federal custody on bail. (ECF No. 23-4, at 39.) Ultimately, the Middle District of

---

[1] It appears that from December 15, 2016, through April 13, 2018, Petitioner physically resided in a federal facility. (ECF No. 1-1, at 2–3.)

Pennsylvania revoked Petitioner's bail on January 25, 2019, for violating his bail conditions, and remanded him into federal custody. (*Id*. at 39, 62.)

On September 9, 2020, pursuant to Petitioner's guilty plea, the Middle District of Pennsylvania sentenced Petitioner to an aggregate term of 70 months in prison, followed by 3 years of supervised release. (*Id*. at 64–73.)  More specifically, the court sentenced Petitioner to 46 months on Count 1, for conspiracy to defraud the Government with respect to income tax claims, and 24 months on Count 7, aggravated identity theft, aiding and abetting, to run consecutively. (*Id*.)  The sentencing court made no mention of a downward departure, which could have reduced Petitioner's federal sentence based on his previous state sentences. (*Id*.)

The Bureau of Prisons ("BOP") calculated Petitioner's sentences as follows:

> Petitioner's federal sentence commenced on September 9, 2020, the day that it was imposed.
>
> Petitioner received prior custody credit ("jail credit") from April 14, 2018, through May 16, 2018, representing the time he spent in custody after the completion of his Pennsylvania state sentences on April 13, 2018[,] and prior to his federal release on bond.  The BOP also awarded Petitioner prior custody credit from January 25, 2019, through September 8, 2020, for the time spent in federal custody after the court revoked his bail-bond through the date prior to the imposition of his federal sentence.
>
> Assuming that Capozzi receives all good conduct time available under 18 U.S.C. § 3624(b), as well as First Step Act credits, he will be released on September 23, 2023.

(ECF No. 23, at 6–7 (citations omitted) (citing ECF No. 23-4, at 75–78).)

The parties dispute whether Petitioner exhausted or was able to exhaust his administrative remedies regarding the claims in this Petition. (*Compare* ECF No. 23, at 10, *with* ECF No. 24, at 1–4.) As the Court intends to deny or dismiss Petitioner's claims on other grounds, the Court will assume

3

*arguendo* that Petitioner was unable to exhaust his administrative remedies and excuse his failure to exhaust.[2]

Petitioner filed the instant Petition in November of 2021, arguing that he should receive additional credit against his federal sentence for the time he spent physically in federal custody, from December 15, 2016, through April 13, 2018. (ECF No. 1-1, at 3.) On December 13, 2021, the Court dismissed Ground Two of the Petition, which argued that a prison official's refusal to provide him with a grievance form entitled him to habeas relief under the First and Fifth Amendments, for lack of jurisdiction. (ECF No. 4.) The Court allowed the remainder of the Petition to proceed. (*Id.*) Respondent filed an Answer opposing relief, (ECF No. 23), and Petitioner filed a Reply, (ECF No. 24).

## II. STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within

---

[2] "If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (internal quotation marks omitted). A court may also excuse exhaustion when a Petitioner shows that exhaustion would be futile or that exhaustion is unavailable. *E.g.*, *Braxton v. Warden Lewisburg USP*, No. 21-2595, 2022 WL 17176479, at *2 (3d Cir. Nov. 23, 2022); *Gross v. Warden, USP Canaan*, 720 F. App'x 94, 98 (3d Cir. 2017).

the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287. In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

### III.   DISCUSSION

Under Ground One, Petitioner appears to raise two separate arguments. First, he argues that he should receive additional jail credit against his federal sentence, for the time he spent in custody from December 15, 2016, through April 13, 2018. (ECF No. 1-1, at 3–6.) Second, he challenges the validity of his sentence, and seeks to correct it, by arguing that his sentencing court failed to reduce his sentence pursuant to U.S.S.G. § 5G1.3(b)(1). (*Id.*) In response, Respondent argues that the law prohibits the BOP from double crediting toward his federal sentence because Petitioner was in the primary custody of Pennsylvania and the time in dispute was credited to his state sentences. (ECF No. 23, at 13–20.) Second, Respondent maintains that Petitioner may only raise his § 5G1.3(b)(1) arguments before his sentencing court, the Middle District of Pennsylvania. (*Id.* at 13.)

Under our jurisprudence, the "authority to calculate a federal sentence and provide credit for time served . . . [belongs] to the Attorney General, who acts through the BOP." *Goodman v. Grondolsky*, 427 F. App'x. 81, 82 (3d Cir. 2011) (per curiam) (citing *United States v. Wilson*, 503

5

U.S. 329, 333–35 (1992)).  "In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence." *Id.* (citing 18 U.S.C. § 3585).

The doctrine of primary custody is critical to the BOP's calculations.  That doctrine "relates to the determination of priority and service of sentence between state and federal sovereigns." *George v. Longley*, 463 F. App'x. 136, 138 n.4 (3d Cir. 2012) (citing *Taylor v. Reno*, 164 F.3d 440, 444 n. 1 (9th Cir. 1998)) (internal quotation marks omitted).  "Custody is usually determined on a first-exercised basis, . . . and sovereigns can relinquish custody by granting bail, dismissing charges, and paroling the defendant.  Custody can also expire at the end of a sentence." *Id.* (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)); *Davis v. Sniezek*, 403 F. App'x. 738, 740 (3d Cir. 2010).  The sovereign who first exercises custody, has primary custody over the individual, and "is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition." *E.g.*, *Preston v. Ebert*, No. 12–1038, 2014 WL 4258338, at *6 (M.D. Pa. Aug. 25, 2014) (citing *Bowman v. Wilson*, 672 F.2d 1145, 1153–54 (3d Cir. 1982)) (internal quotation marks omitted).

With those principles in mind, at the start of the time period at issue, December 15, 2016, Petitioner was still in state custody, serving his state sentences in a state facility. (ECF No. 23-4, at 39, 56.)  In his first argument, Petitioner argues that because he was physically transferred on December 15, 2016, into federal custody, he should receive credit toward his federal sentence from that date through May 16, 2018, the date that the Middle District of Pennsylvania released him on bond. (ECF No. 1, at 6; ECF No. 1-1, at 3–4.)  The BOP, however, had only given him jail credits for the time period between April 14, 2018, the day after his state sentences expired, through May 16, 2018, the date he was released on bond. (ECF No. 23, at 6–7.)

The Court rejects Petitioner's argument. The State of Pennsylvania did not relinquish primary custody over Petitioner during the time period in dispute. Instead, the federal government "borrowed" Petitioner from the State pursuant to a writ of habeas corpus *ad prosequendum*, on December 15, 2016. (ECF No. 23-4, at 56.) "A prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the *first jurisdiction* . . . 'unless and until the first sovereign relinquishes jurisdiction over the prisoner.'" *Williams v. Zickefoose*, 504 F. App'x. 105, 107 n.1 (3d Cir. 2012) (emphasis added) (quoting *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000)); *Vasquez-Alcazar v. Ebbert*, 373 F. App'x 146, 147 (3d Cir. 2010). In other words, a physical transfer through a writ of habeas corpus *ad prosequendum* does not cause the first sovereign to relinquish primary custody, because the prisoner "is considered 'on loan' to federal authorities and remains in primary custody of the state." *Sniezek*, 403 F. App'x at 740. Instead, generally speaking, "a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence." *Id*. (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)). Petitioner does not argue that any of those things occurred when the State of Pennsylvania released him into temporary federal custody. (ECF No. 1-1, at 3–6.)

In his Reply, Petitioner relies on *Brown v. Perrill*, 21 F.3d 1008, 1008 (10th Cir.), *opinion supplemented on reh'g*, 28 F.3d 1073 (10th Cir. 1994), and argues that it is "controlling." (ECF No. 24, at 5–6.) In that case, the Tenth Circuit held that because of the extended duration of the federal physical detention, "the 'loan' effectuated by the writ [of habeas corpus *ad prosequendum*] at some point 'transmuted' into federal 'custody' for purposes of section 3568 such that credit against the federal sentence should have been given to the defendant." *Rios*, 201 F.3d at 273 (quoting *Brown II*, 28 F.3d at 1075).

The flaw in Petitioner's argument is that the District of New Jersey is within the Third Circuit, and not the Tenth Circuit. In *Rios*, 201 F.3d at 274, the Third Circuit explicitly rejected the Tenth Circuit's holding in *Brown* and has consistently affirmed that "a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction . . . unless and until the first sovereign relinquishes jurisdiction over the prisoner." *Williams*, 504 F. App'x. at 107 n.1 (internal quotation marks omitted); *Sniezek*, 403 F. App'x at 740; *Vasquez-Alcazar*, 373 F. App'x at 147. In particular, the Third Circuit rejected the notion "that the length of time in federal detention effectively abrogates the doctrine of primary jurisdiction. . . and 'transmutes' the inmate into a federal prisoner for crediting purposes under section 3585(b)," after an ambiguous amount of time. *Rios*, 201 F.3d at 274.

As a result, in this case, the first sovereign, the State of Pennsylvania, had primary custody over Petitioner during the time period in question, and was entitled to have Petitioner serve his state sentences, prior to serving any federal time. *Bowman*, 672 F.2d at 1153–54. The State did not "relinquish" Petitioner until his state sentences expired on April 13, 2018. *Sniezek*, 403 F. App'x at 740. Consequently, during the time in dispute, from December 15, 2016, through April 13, 2018, Petitioner was in the primary custody of the State of Pennsylvania, and the State applied that time toward his state sentences.

To the extent Petitioner argues that he should *also* receive credit toward his federal sentence for that time period, the Court disagrees. Under 18 U.S.C. § 3585(b), which governs prior custody credit:

> Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> > (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *That has not been credited against another sentence.*

(emphasis added).

Consequently, the BOP could not award Petitioner credit on his federal sentence for the time period of December 15, 2016, through April 13, 2018, because the State of Pennsylvania already applied that time to his state sentences. 18 U.S.C. § 3585(b). Stated differently, § 3585(b) prohibits Petitioner from receiving double credit for that time period. For all those reasons, Petitioner has failed to show that the BOP erred in calculating his sentence or that he is otherwise entitled to additional credits.

Finally, as to Petitioner's second argument, he argues that his sentencing court erred by failing to order a downward departure pursuant to U.S.S.G. § 5G1.3(b)(1). Under Application Note 5 of U.S.S.G. § 5G1.3(b)(1), the comments state:

> Downward Departure Provision.—In the case of a *discharged* term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.

The Government concedes, pursuant to Application Note 5, that Petitioner's "sentencing court could have adjusted his 70-month term to 'credit' for time served on his Luzerne County, Pennsylvania sentences," through U.S.S.G. § 5G1.3(b)(1). (ECF No. 23, at 17.) In such a scenario, the BOP *would not be providing jail credits*, but rather, the sentencing court would be correcting his sentence to account for the additional time.

This Court lacks jurisdiction under § 2241 to consider these claims because a federal prisoner may only challenge the validity of a sentence by filing a motion to vacate, set aside, or

9

correct sentence pursuant to 28 U.S.C. § 2255, before his sentencing court. *E.g.*, *U.S. v. Addonizio*, 442 U.S. 178, 185–88 (1979) (holding that Section 2255 authorizes challenges to the lawfulness of a federal sentence, not to the lawfulness of the performance of judgment and sentence); *Russell v. Martinez*, 325 F. App'x 45, 47 (3d Cir. 2009); *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Conversely, under § 2241, this Court only has jurisdiction to hear challenges to the execution of his sentence, such as the denial or revocation of parole or the loss or calculation of time credits. *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001) ("Thus, Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence.").

Petitioner's argument that the Middle District of Pennsylvania erred by failing to order a downward departure, goes to the validity, rather than the execution, of his sentence. In other words, the claim does not merely involve the BOP's calculation of jail credits, rather, he is arguing that the sentence itself is erroneous, because the sentencing court failed to apply a provision of the Sentencing Guidelines. Accordingly, this Court lacks jurisdiction under § 2241 to hear such claims.

Whenever a party files a civil action in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. This Court finds that it is not in the interest of justice to transfer this matter as Petitioner has already attempted to file a § 2255 motion, and the Middle District of Pennsylvania denied the motion as premature as Petitioner's direct appeals were still pending. (*United States v. Capozzi*, Crim. No. 16-347, ECF No. 326 (M.D. Pa. 2022).) The Middle District of Pennsylvania granted Petitioner leave to file an all-inclusive § 2255 motion after he completes his direct appeals. (*Id.*) As it does not appear that

Petitioner filed a petition for writ of certiorari, his direct appeals completed on or about June 30, 2022, which is ninety days[3] after the Third Circuit denied his direct appeal. (*Capozzi*, Crim. No. 16-347, ECF No. 338.) Accordingly, if Petitioner wishes, he may include his sentencing arguments in his future, all-inclusive § 2255 motion, in accordance with the instructions of Middle District of Pennsylvania.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's claims challenging the validity of, and seeking to correct, his sentence in connection with U.S.S.G. § 5G1.3, for lack of jurisdiction and deny the remainder of the Petition. An appropriate Order follows.

DATED: December 27, 2022

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

---

[3] The ninety days accounts for Petitioner's time to file a petition for writ of certiorari before the Supreme Court. U.S. Sup. Ct. R. 13(1).